UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

_____

|                                   |   |                              |
|-----------------------------------|---|------------------------------|
| UNITED STATES OF AMERICA,         | : | CASE NO. 5:17-cr-376         |
|                                   | : |                              |
|     Plaintiff,| : | OPINION & ORDER              |
|                                   | : | [Resolving Doc. 44]          |
| vs.                               | : |                              |
|                                   | : |                              |
| JUAQUENE L. SOLOMON,              | : |                              |
|                                   | : |                              |
|     Defendant.| : |                              |

_____

JAMES S. GWIN, UNITED STATES DISTRICT COURT JUDGE:

In this 2017 case, Defendant Juaquene Solomon moves for 18 U.S.C. § 3582(c) compassionate release, claiming that his high COVID-19 prison facility exposure risk combined with his diabetes, high blood pressure, and anemia warrant reduction of his sentence to time served.[1]  The Government opposes.[2]  Solomon replies and has twice supplemented his motion.[3]  For the reasons stated below, the Court **DENIES** Solomon's motion.

## I.      BACKGROUND

On September 25, 2017, Solomon pleaded guilty to possession of fentanyl with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B).[4]  On December 19, 2019,

---

[1] Doc. 44.
[2] Doc. 45.
[3] Doc. 46; Doc. 47; Doc. 48.
[4] Doc. 11.

Case No. 5:17-cr-376
GWIN, J.

after an initial sentencing appeal, the Court sentenced Solomon to 85 months' imprisonment.[5]

Solomon has been in custody since his August 7, 2017 arrest[6] and has a projected August 21, 2023 release date,[7] meaning that Solomon has served 41 months and has a 31-month sentence balance.

On August 3, 2020, Solomon moved for compassionate release, claiming that his medical conditions and the high COVID-19 exposure risk at FCI Gilmer, Solomon's prison facility, justified his early release.[8]  The government opposed.[9]  Solomon replied and filed two motion supplements updating the Court on FCI Gilmer's COVID-19 status.[10]

The Court now turns to Solomon's compassionate release motion.

## II.  LEGAL STANDARD

### A.  Exhaustion

The Court may modify a defendant's sentence upon defendant's motion filed at least 30 days after the defendant petitioned their facility's warden for release.[11]  On March 31, 2020, Solomon petitioned FCI Gilmer's warden for compassionate release.[12]  On August 3, 2020, Solomon filed a compassionate release motion in this Court.[13]  Solomon satisfies 18 U.S.C. § 3582(c)(1)(A)'s exhaustion requirement.

---

[5] Doc. 36.

[6] Doc. 14 at 1.

[7] Doc. 44-4 at 1.

[8] Doc. 44.

[9] Doc. 45.

[10] Doc. 46; Doc. 47; Doc. 48.

[11] 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Alam*, 960 F.3d 831, 834–35 (6th Cir. 2020).

[12] Doc. 524-1.

[13] Doc. 524.

Case No. 5:17-cr-376
GWIN, J.

   B.   *Eligibility*
   To grant compassionate release, the Court must: (1) "find that extraordinary and compelling reasons warrant [a sentence] reduction,"[14] (2) "ensure that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and (3) "consider[ ] all relevant sentencing factors listed in 18 U.S.C. § 3553(a)."[15]  Presently, there are no applicable Sentencing Commission policy statements for inmate-filed compassionate release motions.[16]

III.    DISCUSSION

   The court believes that while Solomon does have COVID-19 risk factor conditions, the 18 U.S.C. § 3553(a) sentencing factors weigh against releasing him.

   Solomon was charged with possessing with intent to distribute a relatively small amount of Fentanyl.[17]   But the Presentence Report reflects that Solomon received the Fentanyl from China via packages he had delivered to his girlfriend's house, often addressed to the girlfriend's young daughter.[18]  The shipment for which Solomon was charged was just one out of several delivered in the months before Solomon's arrest.[19]   Solomon also

---

   [14] "[I]n the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *United States v. Elias*, – F.3d —, No. 20-3654, 2021 WL 50169, *2 (6th Cir. Jan. 6, 2021).
   [15] *Id.* (citing *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) (citing 18 U.S.C. § 3582(c)(1)(A))) (internal quotation marks omitted).
   [16] *See Elias*, 2021 WL 50169 at *2 ("[U.S.S.G.] § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions."); *Jones*, 980 F.3d at 1108 (stating that "[t]he Commission's policy statement on compassionate release resides in U.S.S.G. § 1B1.13" but explaining that "§ 1B1.13 does not 'appl[y]' to cases where an imprisoned person files a motion for compassionate release.").
   [17] Doc. 14 at 3.
   [18] *Id.* at 4.
   [19] *Id.*

- 3 -

Case No. 5:17-cr-376
GWIN, J.

possessed digital scales, seven cell phones, and a bullet proof vest in connection with the scheme.[20]

But Solomon's criminal history is more compelling than his current offense. Solomon has committed dozens of crimes throughout his adult life, beginning with felony cocaine possession in 1997 when Solomon was 22 years old.[21] Solomon has 1999 and 2001 cocaine trafficking convictions and a 2012 Heroin possession conviction.[22]

Solomon also has a violent criminal history. He was convicted of domestic violence in 1999 and 2006.[23] Further, in 2008, Solomon was convicted of hitting his wife while she had a court-imposed protective order against him.[24]

Solomon also has multiple firearms charges, both for mishandling a firearm in a motor vehicle and possessing weapons under disability as a convicted felon in 2015 and 2017, respectively.[25] In the 2017 charge, Solomon was pulled over, and police found an open bottle of tequila on the passenger floorboard, marijuana in the driver's side door, and a loaded firearm near the center console.[26]

Aside from his felony convictions, Solomon also has many smaller convictions which demonstrate disregard for the law. Solomon has been convicted *sixteen* times of driving with no driver's license or with a suspended driver's license.[27]

Given Solomon's prolific criminal past, the Court does not believe that supervised

---

[20] *Id.* at 5.
[21] *Id.* at 8.
[22] *Id.* at 9–10, 12.
[23] *Id.* at 9, 11.
[24] *Id.* at 11.
[25] *Id.* at 12–13.
[26] *Id.* at 13.
[27] *Id.* at 7–13

Case No. 5:17-cr-376
GWIN, J.

release will adequately protect the public from Solomon's conduct.  Solomon committed this offense while under state probation for possessing a firearm as a convicted felon.[28]

The Court believes that Solomon poses high recidivism risk.  Solomon is relatively young, having just turned 45, and he is only about three years removed from his most recent criminal conduct.[29]  Solomon has behaved well, served as an orderly, and has undertaken some rehabilitative efforts in prison, but Solomon has repeatedly reoffended after serving lesser state sentences under similar circumstances.[30]

Releasing Solomon at this time would not reflect the seriousness of his offenses, provide just punishment for them, or promote respect for the law.[31]

The Court recognizes that Solomon has medical conditions, including diabetes and high blood pressure, that have been identified as COVID-19 complication risk factors.[32] Further, it is undisputed that FCI Gilmer has active COVID-19 cases.[33] But the Court believes that Solomon' conditions can be adequately controlled by Bureau of Prisons medical staff, as they appear to have been during the first 41 months of his sentence.[34]

While Solomon will bear some COVID-19 exposure risk by finishing his sentence at FCI Gilmer, the Bureau of Prisons has begun administering COVID-19 vaccines under Centers for Disease Control guidance.[35]  As of January 15, 2021, more than 17,000 vaccine

---

[28] *Id.* at 13.
[29] *Id.* at 1.
[30] *Id.* at 12.
[31] 18 U.S.C. § 3553(a).
[32] Doc. 44-1 at 1–9.
[33] Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited Jan. 28, 2021).
[34] Doc. 44-1 at 1–9.
[35] Federal Bureau of Prisons, *COVID-19 Vaccination Efforts Commended*, https://www.bop.gov/resources/news/20210116_covid_vaccine_efforts_commended.jsp (Jan. 16, 2021).

Case No. 5:17-cr-376
GWIN, J.

doses have been administered to federal staff and inmates.[36]   As vaccine distribution

increases over time, Solomon should be able to receive the vaccine.[37]

IV.     CONCLUSION

For these reasons, the Court **DENIES** Solomon's compassionate release motion.

IT IS SO ORDERED.

Dated: February 1, 2021                              _s/      James S. Gwin_
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE

---

[36] *Id.*

[37] *Id.*